Elmore Gloyice ARD, individually, and Royce Ard, a minor, by and through his parent and next friend, Elmore Gloyice Ard, Plaintiffs,

v.

James Patrick EDGINGTON and the United States of America, Defendants.

Lillie ARD, Plaintiff,

v.

James Patrick EDGINGTON and the United States of America, Defendants.

Nos. PCA 1830, PCA 1831.

United States District Court
N. D. Florida,
Pensacola Division.

May 12, 1969.

D. L. Middlebrooks, Pensacola, Fla., George E. Lowrey, Milton, Fla., for plaintiffs.

Robert P. Gaines, Pensacola, Fla., for defendants.

## OPINION

ARNOW, District Judge.

These cases were consolidated for trial. This opinion deals with both of them; incorporated in it are findings of fact and conclusions of law applicable to both, except to the extent they are of necessity applicable to one of them (such as in the matter of damages) when they are applicable only to that one.

These cases are in unusual posture before the Court.

They started as negligence suits against the Defendant, JAMES PATRICK EDGINGTON, and progressed in that fashion through pleadings, discovery, and pre-trial, to the eve of trial. At that time, counsel for Defendant advised the Court and opposing counsel that Defendant was, at the time of the collision, a member of the Armed Forces of the United States traveling under orders in an active duty status, so that under law he was immune from suit, with Plaintiffs remitted for claims they have to the United States under the Federal Tort Claims Act, and that such defense would be presented at the trial.

This, of course, was a matter that should have been settled long before trial. But the United States may not be faulted—the Defendant had not, as the law requires, put it on notice when these suits were filed against him. Nor was Defendant really at fault—it seems that, when sued, he had contacted his insurance company. It had undertaken the defense for him and had made decision it would defend instead of bringing in the government and getting the actions over under the Tort Claims Act. Its decision presumably was influenced by the fact it would be liable over to the government, within its policy limits.

Apparently, becoming concerned just before trial that the damages recovered might exceed policy limits, it then decided to raise the question.

Exactly what prompted it to handle the matter in this unusual fashion I do not know. I do know that Defendant, being entitled to the benefits of the Tort Claims Act, was clearly better off complying with the law and notifying the government so that the claims would proceed under the Tort Claims Act rather than being carried forward in suits that might end in judgment against him in excess of policy limits. I do not understand why his insurance carrier, having undertaken his defense, was not constrained from the beginning so to advise him and to place him in that position. And I do know that, because it did not, these cases are now being tried twice—before a jury and before the Court—with consequent additional expense and loss of time for all concerned. While the record indicates Plaintiffs, long prior to trial in information disclosed in discovery proceedings, should have been put on notice Edgington might be in this status, so that the Tort Claims Act was the exclusive remedy, at least they were not, as was the insurance carrier, under any obligation to him.

At any rate, on the eve of trial, with a jury ready to proceed, and with the government not notified and not having undertaken defense under the Act, I decided to proceed with trial. At trial, Defendant, with some objections from Plaintiffs, was allowed to present evidence showing he was on active duty status. When the jury's verdicts were returned, Plaintiffs' and Defendant's positions changed. Plaintiffs, disappoint-

ed in the amounts of the verdicts, now wanted time to bring in the United States and try to proceed under the Tort Claims Act. The Defendant, pleased, now wanted to forget about the Tort Claims Act and have judgment entered for the amount of the verdicts.

I granted motion of Plaintiffs to withhold judgment pending opportunity for them to file motion to bring in the United States as a defendant, and, subsequently, Plaintiffs' motion to bring in the United States as defendant—with, of course, Defendant Edgington now objecting. The United States was brought in and it filed answer admitting Defendant Edgington was acting within the scope of his employment by it at the time of the collision. It also filed motion for leave to file third party complaint against the insurance carrier alleging it was an additional insured under the company's policy insuring Edgington and was entitled to recover from the company all that Plaintiffs might recover from it. Subsequently it moved ore tenus for leave to withdraw its motion to file such third party complaint, which was granted. At the same time it and Edgington moved jointly for judgment in accordance with the jury verdicts, and that was denied.

I advised all parties the suits would be tried again by the Court without a jury under the Tort Claims Act; they then stipulated such might be done by the Court upon the transcript of the record and evidence taken in the prior trial of the cases before the jury. This I now do.

■ I have gone over the transcript. I agree now, as I did at the trial, with the jury's finding that Defendant was negligent and that his negligence was the proximate cause of Plaintiffs' injuries.

The accident occurred on January 15, 1967, on U. S. Highway 90, approximately five miles east of Robertsdale, Alabama. Edgington was driving east. Plaintiff Elmore Gloyice Ard was driving his car west, and with him in his car were the other plaintiffs, his wife, Lillie Ard, and his minor son, Royce Ard.

Edgington's testimony was that he and another man were traveling from Alamagordo, New Mexico, to Eglin Air Force Base, Florida. They took turns driving—one would drive while the other rested or slept. They stopped to eat, and stopped to sleep about one hour at a wayside park, but stopped no other time to sleep. They started the trip about 8:00 a. m. on January 14, and the accident happened in the afternoon of January 15. He testified he was behind a truck at a place where there was a fairly good clear stretch, so he pulled out to pass it, and was almost past the truck when, according to him, his power failed.

His car went off the left side of the road, down the left side, and came back onto the highway at an angle. Plaintiff's car, coming west, ran into him.

The highway patrolman who investigated testified that Edgington told him right after the accident, that he was attempting to pass the truck, had seen another vehicle coming, and had purposely left the road to avoid striking it. The truck driver testified his speed was about 50 or 55 miles an hour when Edgington started to pass him, and that a portion of his truck was already in the yellow line when he started passing. In an affidavit filed by him, Edgington said that his car lost power as he was trying to pass, he saw a car approaching, he did not have time to fall back, and he went off the road to his left to avoid the oncoming car. In his testimony he said he saw no approaching car.

It appears from a preponderance of the evidence, and I find, Defendant started to pass the truck at a point where he knew, or should have known, because of the yellow line marking on the highway, that it was dangerous to do so.

Plaintiffs had no time to see the danger, or avoid the collision; there was no negligence on part of any of plaintiffs contributing to the accident.

It follows from the foregoing that judgments should be entered against the United States for Plaintiffs' damages.

Insofar as Plaintiff Elmore Gloyice Ard is concerned, the testimony and stipulated facts show he had incurred expenses of hospitalization and medical care and treatment for his wife of $2,902.83, for himself of $17.00, and for his minor son of $49.64, in total amount of $2,969.47. The evidence indicated he would probably incur in the future about $50.00 a year for treatment of his wife. This amount, at her age of 32 years, and using a 4% annuity table, would have a present value of $848.65. For a period of about six months, extra domestic and nursing help was required. The extent and nature of such varied; an amount of $100.00 a month, or a total of $600.00, would be reasonable. The parties agreed the damage to his car amounted to $1,761.23, and he was required to employ extra help in his business at a cost of $954.37.

These damages total $7,133.72. To them must be added damages for his pain and suffering and loss of his wife's services, consortium, society and attentions, in the past and in the future. A total award of $8,500.00 is reasonable.

Insofar as Plaintiff Lillie Ard is concerned, she has sustained bodily injury, some disfiguration, pain and suffering, and lost some capacity for the enjoyment of life experienced in the past, and in the future. Her injury, disfigurement, pain and suffering, and lost capacity for enjoyment of life are all permanent in nature and will continue in the future, though to much less degree than in the months immediately following the accident. A reasonable amount to be awarded her is $12,500.00.

The Plaintiff Royce Ard suffered minor injury and, at his age in life, the discomfort or embarrassment suffered by him during the months his face was discolored must be considered as worthy only of nominal damages. An award of $500.00 to him is a reasonable amount.

These suits should be dismissed as to Defendant James Patrick Edgington and Plaintiffs awarded damages against the Defendant United States of America as follows:

Elmore Gloyice Ard, $8,500.00; Royce Ard, $500.00; and Lillie Ard, $12,500.00,

with costs taxed against the government.

Judgments will be entered in accordance with the foregoing.